**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) STEVEN DODSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. CIV-2013-151-M |
| (1) TORUS SPECIALTY INSURANCE COMPANY; | ) ) ) ) |
| (2) TORUS INSURANCE HOLDINGS LIMITED; | ) ) ) ) |
| (3) NORTH AMERICAN RISK SERVICES, d/b/a NARS; and | ) ) ) |
| (4) GLOBAL RISK HOLDINGS, LLC, | ) ) |
| Defendants. | ) ) |

## COMPLAINT

### PARTIES AND JURISDICTION

1. Plaintiff is a citizen of the state of Oklahoma and resides in this judicial district.

2. Defendant TORUS Specialty Insurance Company is a foreign for profit insurance corporation with is principal place of business at Harborside Financial Center, Plaza 5, Suite 2900, Jersey City, New Jersey 07311 which either directly or through authorized representatives conducts insurance business within the State of Oklahoma.

3. Defendant TORUS Insurance Holdings Limited is a foreign for profit corporation which underwrites commercial, professional, specialty and reinsurance products to a global client base through seven (7) wholly-owned insurance subsidiaries, including the Defendant, TORUS Specialty Insurance Company.

4. Defendant TORUS Insurance Holdings Limited was incorporated on November 21, 2007, under the laws of Bermuda and maintains its principal place of business and registered office location at Clarendon House, 2 Church Street, Hamilton, HM 11,

Bermuda and through its wholly-owned insurance subsidiary, TORUS Specialty Insurance Company, conducts business within the State of Oklahoma.

5.     Defendant TORUS Insurance Holdings Limited has in the past, and upon information and belief, continues to report its financial position based upon consolidated financial statements which include the financial performance of Defendant TORUS Specialty Insurance Company and as such either directly and/or indirectly benefits from the claim losses and gains of the Defendant TORUS Specialty Insurance Company.

6.     Defendant North American Risk Services, d/b/a NARS provides nationwide claims, data and risk management TPA services (including such services within the State of Oklahoma) to businesses, insurers, reinsurers and brokers in the United States. NARS is known for the experience and expertise of its employees and the application of those skills in controlling its customers' loss and administrative costs by tailoring its claim management approach to fit each unique risk circumstance, including its insurance company customers, including Defendant TORUS Specialty Insurance Company.

7.     Inasmuch as the services offered by Defendant North American Risk Services, d/b/a NARS include offering experience and expertise in controlling its insurance customers' loss and administrative costs by tailoring its insurance claim management approach to fit each unique risk circumstance, it either directly and/or indirectly benefits from the claim losses and gains of its insurance company customers, including Defendant TORUS Specialty Insurance Company.

8.     Defendant Global Risk Holdings, LLC, maintains its principal place of business at 180 Mine Lake Court, Raleigh, NC, 27615 and is part of a consortium of insurance management companies specializing in providing industry related services to carriers, brokers, self-insureds or associations requiring specialized approaches and expertise.

9. Defendant Global Risk Holdings, LLC, through its consortium of insurance management companies acquired and now owns, manages and operates Defendant North American Risk Services, d/b/a NARS and as such conducts business within the State of Oklahoma.

10. Defendant Global Risk Holdings, LLC, through its consortium of insurance management companies which includes Defendant North American Risk Services, d/b/a NARS provides experience and expertise in controlling its insurance customers' loss and administrative costs by tailoring its insurance claim management approach to fit each unique risk circumstance.

11. By virtue of Defendant Global Risk Holdings, LLC, through its consortium of insurance management companies, which includes Defendant North American Risk Services, d/b/a NARS providing experience and expertise in controlling its insurance customers' loss and administrative costs by tailoring its insurance claim management approach to fit each unique risk circumstance it either directly and/or indirectly benefits from the claim losses and gains of its insurance company customers, including Defendant TORUS Specialty Insurance Company.

12. This court has original jurisdiction under 28 U.S.C. §1332, as this matter involves in excess of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

**OBJECT AND NATURE OF ACTION**

13. This is an action by Plaintiff to redress the improper denial of Plaintiff's claims for uninsured motorist coverage benefits which continues to present.

14.     This is an action to recover actual and punitive damages from Defendants based upon the theories of breach of contract, negligence and breach of the duty of good faith and fair dealing; *i.e.*, bad faith.

## FACTS COMMON TO ALL DEFENDANTS

15.     The insurance policy at issue in this case is a commercial auto insurance policy issued by TORUS Specialty Insurance Company to Road Runner Trucking, LLC, policy number 43078A100C, policy form CA DS 03 03 06.

16.     The insurance policy at issue in this case has a policy period of November 15, 2010 through November 15, 2011.

17.     The insurance policy at issue in this case issued by TORUS Specialty Insurance Company to Road Runner Trucking, LLC, assigned policy number 43078A100C includes endorsement CA 21 18 03 06 which is an *Oklahoma Uninsured Motorist Coverage* endorsement.

18.     The *Oklahoma Uninsured Motorist Coverage* endorsement which is a part of the policy at issue provides, in pertinent part:

> **D. Limits of Insurance:**
>
> ... If there is more than one covered "auto", our limit of insurance for any one "accident", if the "bodily injury" is sustained by an individual Named Insured or any "family member", is the sum of the limits applicable for each covered "auto".

19.     The *Oklahoma Uninsured Motorist Coverage* endorsement which is a part of the policy at issue provides an uninsured motorist limits of $1,000,000 per accident.

20.     The total uninsured motorist limits available to Plaintiff is the sum of the limits applicable for each covered "auto".

21. Item Two of the policy, *Schedule of Coverages and Covered Autos* provides, in pertinent part:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more symbols from the Covered Autos Section of the Business Coverage Form next to the name of the coverage.** (Bold in original)

22. Item Two of the policy, *Schedule of Coverages and Covered Autos* also provides symbol "10" for as the designation for those vehicles covered with uninsured motorist coverage.

23. Item Two of the policy, *Schedule of Coverages and Covered Autos* also shows a premium charge of $4,465 for uninsured motorist coverage.

24. Item Three of the policy, *Schedule of Covered Autos You Own* lists forty-seven (47) separate vehicles.

25. The insurance policy at issue in this case includes a *Covered Auto Designation Symbol* endorsement, CA 99 54 07 97 with an effective date of November 15, 2010.

26. Item Two Section I of the *Covered Auto Designation Symbol* endorsement provides, in pertinent part:

> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

27. Under the *description of Covered Auto Designations Symbols* symbol "10" is defined as follows:

> Any "auto" that you own, lease, hire, rent or borrow. This includes those "autos" you acquire ownership of, lease, hire, rent or borrow after the policy begins, Coverage for "autos" that are acquired, leased, hired or rented after the policy begins will be the same type and deductible (if applicable) that corresponds to the scheduled vehicles of similar rating codes. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members, (if you are a limited liability company) or members (sic) of their household.

Therefore, applying the policy language to the facts of this case, there is up to and including $47,000,000.00 of uninsured motorist coverage limits available to Plaintiff.

28. On September 3, 2011, the Plaintiff, Steven Dodson, was injured in an automobile collision.

29. Plaintiff was fault free in the happening of the automobile collision of September 3, 2011.

30. At the time of the collision Plaintiff was an employee of Road Runner LLC and, while acting within the scope of his employment, was operating a vehicle owned by his employer Road Runner LLC.

31. The vehicle that Plaintiff was operating was struck by another vehicle owned by Road Runner LLC that was, at the time, being operated by a fellow employee of Road Runner LLC, Mr. Jeffrey Webber.

32. Plaintiff claims for uninsured motorist and medical payments coverage benefits were timely reported to Defendants.

33. Plaintiff claims were received by Defendants or on September 16, 2011.

34. Plaintiff claims were assigned claim number TIST11090027.

35. Plaintiff claims were assigned to Defendant North American Risk Services, d/b/a NARS's Senior Claim Adjuster, Jeff Laviletta.

36. Plaintiff has heretofore complied with all conditions precedent to payment of benefits due and owing to him under the policy.

37. Plaintiff has heretofore complied with all conditions subsequent to payment of benefits due and owing to him under the policy.

38. For purposes of the collision giving rise to Plaintiff's injuries, the vehicle being operated by Mr. Jeffrey Webber is an uninsured motor vehicle.

39. At the time of the collision giving rise to Plaintiff's injuries, Plaintiff was occupying a covered auto and therefore, under the terms of the policy at issue, qualifies as an insured for purposes of uninsured motorist coverage.

40. On or about October 9, 2012, Plaintiff, through his counsel provided Defendants with a Medical Authorization signed by Plaintiff.

41. On or about October 9, 2012, Plaintiff, through his counsel provided Defendants with a listing of medical providers who treated Plaintiff for injuries related to the collision at issue.

42. On or about October 9, 2012, Plaintiff, through his counsel provided Defendants with medical records in counsel's possession that included:

    1. Newman Memorial Hospital ER records dated 9/3/11 - 9/12/11
    2. Jeremy Phelps, M.D. records dated 9/26/11 - 8/28/12
    3. Robert Wienecke, M.D. records dated 2/1/12 and
    4. Choice Physical Therapy records dated 6/15/12 - 8/27/12

43. On or about October 9, 2012, Plaintiff, through his counsel provided Defendants with information regarding Plaintiff's lost wages.

44. On or about October 9, 2012, Plaintiff, through his counsel advised Defendants that Plaintiff had finished his medical treatment, but had not returned to work.

45.	Defendants have refused to advise Plaintiff of all of the benefits available to him under the policy.

46.	Defendants have refused to evaluate and/or consider the nature and extent of Plaintiff's injuries and damages.

47.	Defendants failed to properly utilize the executed medical authorization which Plaintiff previously provided to obtain all records and bills necessary to fully pay all of Plaintiff's claim.

48.	The individual claim representatives, customer service representatives, underwriting representatives, corporate support personnel and/or other personnel who have the responsibility to investigate, evaluate and timely pay Plaintiff's claim for benefits are agents, servants, representatives and/or employees of one or more of the Defendants and/or were acting at the direction of and under the ultimate supervision of one or more of the Defendants.

49.	In addition to the express terms of the insurance contract, by operation of Oklahoma law, Defendants have a duty to act in good faith and fair dealing regarding their performance under the insurance policy at issue.

50.	Oklahoma law governs the rights, duties and obligations of the parties.

51.	Under Oklahoma law, in addition to the express terms and conditions contained in an insurance policy the insurance policy includes the law applicable to the policy.

52.	Under Oklahoma law, provisions of an insurance contract may arise from statute as opposed to the express writing contained in the document agreed to by the parties.

53.	Under Oklahoma law, the duty of good faith and fair dealing applies to activities after the establishment of the insurer-insured relationship, and includes the claims handling process.

54. Under Oklahoma law, the duty of good faith and fair dealing requires the insurer to take positive steps to adequately investigate its insureds' claims.

55. Under Oklahoma law, the duty of good faith and fair dealing requires the insurer to take positive steps to adequately evaluate its insureds' claims.

56. Under Oklahoma law, the duty of good faith and fair dealing requires the insurer to take positive steps to respond to its insureds' claims.

57. Defendants have a duty to act in good faith and fair dealing when dealing with an insured to take reasonable steps to ensure that all claims available to Plaintiff which are presented under the insurance policy are handled in good faith so as to fulfill its promise of protection.

58. In failing to advise Plaintiff of all benefits available to him and in delaying and denying Plaintiff's claim for benefits, Defendants have breached their duty of good faith and fair dealing.

59. Their duty of good faith and fair dealing notwithstanding, Defendants have intentionally, willfully, maliciously, and/or in reckless disregard of the rights of the Plaintiff, unreasonably delayed, denied and failed to fully pay all of the benefits available to Plaintiff. Further, such conduct exhibited by Defendants was intentional and with malice.

60. Defendants are responsible for the conduct of their employees as well as the employees of any affiliates, sub-agents or representatives.

61. The duty of good faith and fair dealing which Defendants owe to its insured is non-delegable under Oklahoma law.

62. As a result of Defendants' failure to properly and timely fully pay all of the benefits available to Plaintiff, Plaintiff has sustained consequential damages.

63. Defendants' intentional refusal to promptly and fully pay all of the benefits available to Plaintiff was, and continues to be, a breach of the implied-in-law duty of good faith and fair dealing.

64. As a proximate result of Defendants' breach of good faith and fair dealing, Defendants' intentional refusal to promptly and fully pay all of the available benefits, Defendants' consequential breach of the implied-in-law duty of good faith and fair dealing, and Defendants' breach of contract, Plaintiff has sustained actual damages, statutory interest on the unpaid benefits, consequential damages in excess of $75,000.00, and punitive damages in excess of $75,000.00.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants for actual, consequential and punitive damages, attorney fees, interest, and costs.

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

Respectfully submitted,

*/s/ Joseph T. Acquaviva, Jr.*
Joseph T. Acquaviva, Jr., OBA #11743
***WILSON CAIN & ACQUAVIVA***
300 Northwest 13th Street, Suite 100
Oklahoma City, Oklahoma 73103
Telephone: (405) 236-2600
Facsimile: (405) 236-2607
JTAcqua@aol.com

AND

Bryce Johnson, OBA #11369
***BRYCE JOHNSON & ASSOCIATES***
105 North Hudson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 232-6490;
Facsimile: (405)236-3676
bjohnson@oklalegal.com

**ATTORNEYS FOR PLAINTIFFS**